FILED

FEB 0 4 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTIE DAVIS,

        Plaintiff,

                                                CV 10-811-PK

                                                FINDINGS AND
v.                                            RECOMMENDATION

PEOPLES CHOICE HOME LOAN, INC.,
MARTIN BONANNO,
USB AG INVESTMENT TRUST,
R.K. ARNOLD,
MERS INC. (MORTGAGE ELECTRONIC
REGISTRY SYSTEM),
OCWEN LOAN SERVICING,

          Defendants.

---

PAPAK, Judge:

        Plaintiff Christie Davis files this action *pro se* alleging defendants committed various

predatory lending practices related to her home mortgage refinance.[1]  Davis seeks reimbursement of payments she made on the loan, relief from any existing debt under the loan, and additional damages.  There is no indication that the foreclosure process has yet been initiated.  On October 27, 2010, Judge Brown court adopted this court's Findings and Recommendation granting defendants' Ocwen Loan Servicing ("Ocwen") and MERS Inc.'s ("MERS") motion to dismiss. (#48.)  In that order, Judge Brown granted Davis the opportunity to amend her complaint to cure the deficiencies identified previously by this court.  Judge Brown, however, warned that Davis' fourth amended complaint would be dismissed *with prejudice* if it failed to cure those deficiencies.  Davis' fourth amended complaint alleges a number of grievances, only a small portion of which are aimed at Ocwen and MERS.  Now before this court is Ocwen and MERS' motion to dismiss (#59) pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, the motion should be granted in part and denied in part.

## LEGAL STANDARD

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party.  *Kearns v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*,

---

[1]Only defendants Ocwen Loan Servicing and MERS Inc. have been properly served. Davis nevertheless names several defendants in her complaint that have not been served, including Peoples Choice Home Loan, Inc. ("Peoples Choice"), Martin Bonanno, UBS AG Investment Trust, and R.K. Arnold.  The caption of this opinion follows Davis' naming convention without implying that this court has jurisdiction over parties not yet served.

476 F.3d 756, 763 (9th Cir. 2007). Finally, if the court dismisses for failure to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by alleging other facts. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

To survive a motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), citing *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

In cases involving a plaintiff proceeding *pro se*, this court construes the pleadings liberally and affords the plaintiff the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988). That is, courts hold *pro se* pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Specifically, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *See Karim-Panahi*, 839 F.2d at 623-624.

## FACTS

**I.    Loan Origination**

Page 3 - FINDINGS AND RECOMMENDATION

Plaintiff Christie Davis purchased her home in Boring, Oregon, in October 1999. (Fourth Amend. Compl., #54, at 5.) In February 2006, Davis sought lending services from People's Choice Home Loan, Inc. ("People's Choice"). *Id.* at 3, 28. Although Davis originally sought a home equity loan of $100,000, a People's Choice agent named Marty Christian convinced her that it would be better for her to refinance. *Id.* at 3,5. On February 14, 2006, Davis executed a Deed of Trust securing a loan of $467,500.00 from People's Choice.[2] (Memo in Supp. of Def.'s Mot. to Dismiss, #60, Ex. 1.) Davis alleges that Christian and People's Choice committed numerous acts of misconduct in originating Davis' loan, none of which are relevant to the present motion brought by Ocwen and MERS. *Id.* at 3-7.

## II.    Ocwen Assumes Loan Servicing

In July 2006, Ocwen assumed servicing of Davis' loan. *Id.* at 5,12,16, 24. Davis allegedly did not enter into any contract concerning Ocwen's servicing of the loan. *Id.* at 11, 19. Rather, she "innocently complied with the 'servicing transfer'" between People's Choice and Ocwen. *Id.* Moreover, Davis contends that when Ocwen "took over" servicing of her loan, Ocwen knew that the loan was fraudulently originated and that Davis was vulnerable due to her age, employment status, and other factors.[3] *Id.* at 10. Davis also asserts that People's Choice

---

[2] Pursuant to Fed. R. Evid. 201, I take judicial notice of the deed of trust and note submitted by defendants. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute on other grounds) (court may take judicial notice of documents crucial to the plaintiff's claims but not explicitly incorporated in plaintiff's complaint); *Baumgardner v. Smurfit-Stone Container Corp.*, 347 F. Supp. 2d 927, 932 n.5 (D. Or. 2004) ("The court may consider matters outside the pleadings in a motion to dismiss without converting the motion into one for summary judgment, so long as the authenticity of the attached evidence is not contested and plaintiffs' complaint necessarily relies on that evidence.").

[3] For these reasons, Davis also alleges that the loan was "null and void" at its inception because her acceptance of the loan was induced by improper conduct. *Id.* at 10-11.

never assigned the underlying mortgage debt to Ocwen. *Id.* at 8 ("OCWEN is no the lender of my loan.") Thus, Davis alleges that Ocwen misrepresents its interest in her property. *Id.* at 8 ("OCWEN obscurely implies it may have some interest but doesn't ever commit to any claim or responsibility as a lender.")

The note signed by Davis for the People's Choice loan explicitly permits the lender to transfer the note to a new note holder who would be entitled to receive payments under the note. (Memo in Supp. of Def.'s Mot. to Dismiss, #60, Ex. 2 at ¶1.) The deed of trust signed by Davis also permits transfer and assignment of the loan. *Id.*, Ex. 1 at ¶20.

### III.    Late Payments

Within a short time after Ocwen started servicing Davis' loan, Ocwen allegedly accused her of submitting late payments. *Id.* at 24. Davis, however, presented mail confirmations of her on-time payments. *Id.* It is unclear from Davis' complaint whether Ocwen placed Davis into default at that time.

### IV.    Flood Insurance

On November 4, 2006, Davis received a notice from Ocwen stating that her property was in a FEMA-designated "Special Flood Hazard Area" and that she needed to obtain flood insurance or her escrow account would be charged $2,250.00 for the appropriate coverage. *Id.*, Ex. D at 1. Davis contested the charge several times by phone. *Id.* at 22. She also faxed documentation to Ocwen that she believed showed that her property was not in the FEMA-designated flood zone and consequently requested a refund of her insurance premium. Ex. D at 3-8. The charge nevertheless remained on her escrow account. *Id.* at 21-22. On May 13, 2008, Davis received a letter from Ocwen stating that FEMA no longer considered Davis' property to

Page 5 - FINDINGS AND RECOMMENDATION

be in the flood zone and that Davis no longer required flood insurance. *Id.* at 22, Ex. B at 1. Davis allegedly called FEMA and determined that her property never had been in a designated flood zone. *Id.* at 22.

## V.    People's Choice Bankruptcy

Davis alleges that in March 2007, People's Choice became insolvent and went into bankruptcy. *Id.* at 9,12-13, 27. However, Ocwen never informed Davis of this development, concealing "vital information" from Davis concerning Peoples' Choice's bankruptcy and "posing as a loan servicer" for Peoples' Choice. *Id.* at 5,9, 17. Because of People's Choice's bankruptcy, Davis alleges that Ocwen lost the right to collect her loan payments. *Id.* at 9. Therefore, Davis denies any payment obligation to Ocwen. *Id.* Accordingly, she also contends that Ocwen has no legal interest in her property. *Id.* at 34. ("OCWEN HAS NO STANDING TO ENTITLEMENT TO MY HOME PROPERTY.")

On the record before the court, there remains considerable ambiguity concerning the parties' relationships to the loan following People's Choice's alleged bankruptcy. Presumably, People's Choice either sold the mortgage or assigned the mortgage to its creditors during the bankruptcy proceeding. However, neither Davis' fourth amended complaint nor the parties' briefing describes who currently holds the mortgage note. The caption of Davis' complaint lists USB AG Investment Trust as a defendant, which suggests that company may be the current note holder, although Davis makes no allegations to that effect. In light of the sparse record, it is unclear on whose behalf Ocwen continues to service Davis' loan. Finally, defendant MERS appears listed as the beneficiary under the deed of trust securing Davis' note, but there is no indication MERS has attempted to assign that interest to another entity.

## VI.    Changes in Monthly Payments

In April 2008, Ocwen increased Davis' monthly loan payments from $3,076.59 per month to $3,639.64 per month. *Id.,* Ex. C at 2. Six months later, Ocwen reduced Davis' payments to $3,374.01. *Id.* at 22-23. Finally, in April 2009, Ocwen reduced the payments again to $3,077.27. *Id.* Davis alleges that the increased payment amount in April 2008 coincided with her worsening financial situation and that the increase constituted an attempt by Ocwen to drive her into foreclosure. *Id.* at 22. The terms of Davis' mortgage, however, include an adjustable interest rate subject to change starting on March 1, 2008 and every six months thereafter, with the new rates linked to an index of prevailing interest rates. (Memo in Supp. of Def.'s Mot. to Dismiss, #60, Ex. 2 at ¶¶2,4.)

## VII.    Credit Reporting

Davis also alleges that Ocwen continues to defame her character by reporting her to credit agencies in an effort "to create additional leverage over [her] finances." *Id.* at 15. Davis claims these reports are particularly damaging because she is a middle-aged woman who has been unemployed since 2001 and is searching for a new career. *Id.*

## VIII.    Other Loan Servicing Behavior

In addition to the conduct already described, Davis alleges that Ocwen engaged in several other improper loan servicing practices. First, Ocwen made Davis "feel that I was in trouble by the bold and aggressive manner of their servicing." *Id.* at 16. Second, Ocwen sent Davis continued requests for verification of hazard insurance even though she had already responded by asking her insurance agent to provide Ocwen with the insurance paperwork. *Id.* at 18. Davis characterizes this as an effort to harass her and defraud her out of her home by "impoverishing

[her] to the point of no return." *Id.* at 18.  Third, on October 15, 2010, Ocwen allegedly

attempted to blackmail and coerce Davis into some unspecified contractual obligation. *Id.* at 14.

Finally, Davis alleges that Ocwen has caused her to have "tremendous apprehension" in dealing

with that company, to the extent that she is now afraid "to even leave my home after hearing

reports of the robo-signing where people are having their homes broken into, things stolen and all

manner of fraud to get people out of their homes to steal them." *Id.* at 16.

## IX.   MERS

Davis alleges generally that MERS "IS BEING UTILIZED AS A 'FRAUDULENT'

'SECURITIES OWNER'." *Id.* at 31.  Davis also contends that MERS is not properly the

nominee of People's Choice, her original lender, since People's Choice became insolvent. *Id.* at

24-25.  Finally, Davis alleges that, to the extent MERS claims to be a valid beneficiary under the

deed of trust, MERS must be accountable for People's Choice's impropriety in initiating the

loan. *Id.* at 25.

## ANALYSIS

Davis' fourth amended complaint is an unwieldy 39-page document that features

disjointed factual allegations, scattered legal terminology, and frequent generalized

condemnations of the mortgage lending industry.  While Davis' primary allegations concern

People's Choice and its agent, neither of whom have been properly served as defendants in this

action, the complaint also includes some grievances against Ocwen, and to a lesser extent,

MERS.  I attempt to construe these allegations as various claims for relief.  Only Davis'

allegations amounting to a conversion claim plausibly state a basis for recovery.

Page 8 - FINDINGS AND RECOMMENDATION

I.    **Unjust Enrichment**

Davis' central grievance is that Ocwen became unjustly enriched by accepting her loan payments after People's Choice's bankruptcy in March 2007, which purportedly relieved her of any further payment obligation under her mortgage.  Because Davis alleges that she had no contract with Ocwen directly, I construe Davis' allegations as a quasi-contract claim for unjust enrichment.  A quasi-contract claim requires that: (1) a benefit is "conferred"; (2) the recipient is aware that a benefit has been received; and (3) "it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Robinowitz v. Pozzi*, 127 Or App 464, 467, 872 P2d 993 (1994).  For the third element to be satisfied, one of the following factors must be present: "(1) the plaintiff had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by non-payment." *Id.* at 467–468 (quoting 1 Corbin, Contracts §19A (Supp 1992)).

Here, Davis' complaint clearly alleges the first two elements: she made monthly mortgage payments to Ocwen after March 2007 and Ocwen was aware of those payments.  But, Davis' unjust enrichment claim falters because her complaint fails to allege facts suggesting that it would be unjust to permit Ocwen to retain Davis' mortgage payments.  Davis presumes that People's Choice's bankruptcy terminated her payment obligation under the mortgage.  This is a legal conclusion that I am not required to accept as true for the purposes of a motion to dismiss. *Iqbal*, 129 S. Ct. 1937, 1951 (2009) (bare conclusory allegations not entitled to be assumed true).  Moreover, I find no factual allegations in Davis' complaint, which, if true, would plausibly support that conclusion.

In fact, the express terms of Davis' note and deed of trust establish the opposite. Davis' mortgage remains in force even if it is transferred or assigned to another entity, as would likely occur during a bankruptcy proceeding. (Memo in Supp. of Def.'s Mot. to Dismiss, #60, Ex. 2 at ¶1) (note provides that "Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"); (Ex. 1 at ¶20) (deed of trust provides that "the Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower"). Moreover, Davis remains obligated to make payments on the loan to a servicer when such a transfer of the note occurs. *Id.*, Ex. 2 at ¶3 (note requires borrower to make monthly payments to any address required by the note holder); Ex. 1 at ¶20 (deed of trust provides for continued loan servicing even after sale of the note: " If the Note is Sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are note assumed by the Note purchaser unless otherwise provided by the Note purchaser.") Thus, assuming that People's Choice transferred the note during bankruptcy, there would be no injustice in allowing Ocwen to continue collecting Davis' monthly loan payments on behalf of the new note holder.   Davis therefore fails to state a claim for unjust enrichment.

## II.    Fraud

Although the majority of Davis' references to fraud involve People's Choice, there are several aspects of Davis' complaint that I construe as fraud allegations against Ocwen. The elements of a claim for fraud under Oregon law are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it

should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976); *Johnsen v. Mel-Ken Motors*, 134 Or. App, 81, 89, 894 P.2d 540 (1995). Moreover, fraud claims must be alleged with particularity in order to allow the defendant to actually defend the accusation rather than simply deny it has done anything wrong. Fed. R. Civ. P. 9(b); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal citation omitted). Rule 9 requires allegations including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.*

All of Davis' fraud allegations against Ocwen fail to satisfy the basic common law pleading standard as well as the heightened federal pleading requirement. For example, Ocwen's alleged failure to inform Davis that People's Choice went bankrupt is not actionable. Although concealment of material facts can constitute fraud, in this instance Davis had no right to rely upon Ocwen to inform her of People's Choice's bankruptcy. That is, Ocwen had no affirmative obligation to notify Davis of the financial status of the bank holding her mortgage debt or of an assignment or transfer of that mortgage debt to a new institution.[4] Additionally, Davis' allegation that Ocwen misrepresented her obligation to pay flood insurance starting in early November 2006 does not state a fraud claim because Davis does not contend she relied on that representation. Rather, Davis apparently contested the insurance charge almost immediately. (Fourth Amend. Compl., #54, Ex. D at 7) (fax cover sheet from Davis on November 24, 2006

---

[4] The Truth In Lending Act (TILA) requires that the *creditor* who becomes a new owner or assignee of a mortgage debt– not the loan servicer– notify the borrower of the transfer of the debt within 30 days. 15 U.S.C. § 1641(g).

described as "third attempt" to correct Ocwen's records). Davis' other factual allegations against

Ocwen also fail as fraud claims because they lack specific factual support for crucial elements

such as false representation, scienter, or reliance.

## III.    Defamation

Davis also alleges that Ocwen defamed her through reports to a credit agency. In Oregon,

"[t]he elements of a claim for defamation are:  (1) the making of a defamatory statement; (2)

publication of the defamatory material; and (3) a resulting special harm, unless the statement is

defamatory *per se* and therefore gives rise to presumptive special harm." *Nat'l Union Fire Ins.*

*Co. v. Starplex Corp.*, 220 Or. App. 560, 584 (Or. Ct. App. 2008), *citing L&D* of Oregon, Inc., v.

American States Ins. Co., 171 Or. App. 17, 22, 14 P.3d 617 (2000).  "A defamatory statement is

one that would subject another to hatred, contempt or ridicule or tend to diminish the esteem,

respect, goodwill or confidence in which the other is held or to excite adverse, derogatory or

unpleasant feelings or opinions against the other." *Id.* (internal quotation marks and

modifications omitted) (quoting *Marleau v. Truck Insurance Exchange*, 333 Or. 82, 94 (2001)).

"Truth is an affirmative defense to a defamation claim." *Lansford v. Georgetown Manor, Inc.*,

192 Or. App. 261, 270 ( 2004) (citing *Bank of Oregon v. Independent News, Inc.*, 298 Or. 434,

437 (1985)).  In addition:

> An allegedly defamatory statement is subject to a qualified or conditional
> privilege if (1) it was made to protect the interests of the defendant; (2) it was
> made to protect the interests of the plaintiff's employer; or (3) it was on a subject
> of mutual concern to the defendant and the person to whom the statement was
> made.

*Id.* (quoting *Affolter v. Baugh Construction Oregon, Inc.*, 183 Or. App. 198, 204 (2002)). "The

burden of proving an abuse of the qualified privilege. . . rests upon the plaintiff." *Id.* (quoting

*Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 356 (1977)).

Here, Davis' allegations cannot support a defamation claim. Davis' complaint states generally that Ocwen "endeavor[ed] to damage my credit worthiness by causing disparagement to my credit report . . ." (Fourth Amend. Compl., #54, at 15.) Since Davis does not describe the actual content of Ocwen's damaging credit reporting, it is difficult to determine whether Ocwen's alleged statement would diminish Davis' respect or goodwill in the community, as is required to satisfy the first element of a defamation claim. Even if Davis pled facts establishing the first element of defamation, she fails to plead special damages. *See Clark v. Morrison*, 80 Or. 240, 245 (1916) (special damages are damages for pecuniary loss or loss of material advantage). Although Davis asserts broadly that Ocwen's credit reporting produced "exponential injurious harm which will bring exponential damage to my life immediately and over time," Davis fails to allege any specific facts describing the financial loss she suffered from Ocwen's allegedly defamatory credit report. (Fourth Amend. Compl., #54, at 15.) Without even addressing Ocwen's arguable conditional privilege to report payment data, it is clear that Davis does not include enough factual content in her complaint to create a plausible basis for relief.

## IV.    Intentional Infliction of Emotional Distress

Davis also alleges that Ocwen engaged in several other improper tactics, including blackmail, harassment, repeated demands for proof of insurance, and manipulation of her monthly loan payment amount. I construe these allegations as a claim for intentional infliction of emotional distress. Davis, however, fails to satisfy the pleading requirements for such a claim. Intentional infliction of emotional distress requires allegations that the defendant intended to inflict severe emotional distress on plaintiffs or knew such distress was substantially certain to

Page 13 - FINDINGS AND RECOMMENDATION

result from its conduct; that defendant's acts caused plaintiffs severe emotional distress; and that defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *See, e.g., McGanty v. Staudenraus*, 321 Or. 532, 543, 901 P.2d 841 (1995); *Campbell v. Safeway, Inc.*, 332 F. Supp.2d 1367, 1376 (D. Or. 2004). Davis certainly implies that Ocwen intended to harm her emotionally by forcing her into foreclosure and that she indeed felt vulnerable and apprehensive as a result. But, simply put, these allegations are too vague to be actionable.[5] Davis provides no specific details concerning Ocwen's alleged blackmail attempt, its "bold and aggressive manner of their servicing," and its hounding through repeated requests for insurance documentation. Thus, Davis' complaint fails to plead facts suggesting that Ocwen's alleged acts went beyond the bounds of socially tolerable conduct, as is required for this tort.

## V.   Securities Fraud / Racketeering

Davis also alleges that Ocwen and People's Choice engaged in "racketeering endeavors" through the use of MERS to defraud homeowners. Davis, however, does not identify any predicate acts which could support a claim under the Federal Racketeer Influenced and Corrupt Organizations Act (RICO). *See* 18 U.S.C. § 1962(a) (prohibition on benefitting from racketeering activity); *Id.* at § 1961 (listing federal violations constituting racketeering activity). Moreover, the federal requirement for pleading fraud allegations with particularity has long been applied to securities fraud complaints and Davis provides no details of the alleged securities

---

[5] The allegation that Ocwen improperly increased Davis' monthly payments is not vague, but it fails for other reasons. The increased monthly payment amount do not plausibly constitute socially intolerable conduct, since they can be explained by the nature of Davis' adjustable rate loan, which permitted monthly payment increases once every six months starting in March 2008.

fraud committed by Ocwen and MERS. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Semegen v. Weidner*, 780 F.2d 727, 729, 734-35 (9th Cir. 1985).

## VI.    Conversion

Davis alleges that Ocwen charged her for flood insurance that she did not require. I construe this as a claim for conversion. Under Oregon law, conversion is "the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel." *Emmert v. No Problem Harry, Inc.*, 222 Or. App. 151, 159-160, 192 P.3d 844 (2008) (citing *Mustola v. Toddy*, 253 Or. 658, 456 P.2d 1004 (1969)). "[T]he gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights." *Naas v. Lucas*, 86 Or. App. 406, 409, 739 P.2d 1051 (1987) (citing *Lee v. Wood Prods. Credit Union*, 275 Or. 445, 551 P.2d 446 (1976)). Money is included within the concept of "a chattel." *In re Complaint as to the Conduct of Martin*, 328 Or. 177, 184 n.1, 970 P.3d 638 (1998); *see Hemstreet v. Spears*, 282 Or. 439, 444, 579 P.2d 229 (1978) (employee who wrote checks for cash on employers' accounts liable for conversion). Conversion results only from intentional conduct, but an individual who mistakenly believes that his conduct is legal may still commit conversion. *In re Wyllie*, 331 Or. 606, 620 (2001).

Here, Davis' fourth amended complaint includes enough specific factual allegations to state a plausible claim for conversion concerning her flood insurance premium. As an initial matter, the $2,250.00 charge on Davis' escrow account for flood insurance falls within the definition of a chattel. Moreover, Davis alleges that Ocwen acted intentionally in assessing that

Page 15 - FINDINGS AND RECOMMENDATION

insurance charge, even though Ocwen apparently believed that a FEMA designation required Davis to obtain such insurance. Further, Davis alleges that the insurance charge was inconsistent with her right to retain that money, since her property was never located within a flood zone identified by FEMA. Although this matter is open to factual dispute, Davis' allegations concerning the improper flood insurance charge state a claim for common law conversion.

## VII.   MERS

Although Davis' complaint refers frequently to MERS' role in fraudulently concealing the ownership of mortgages across America, that generalized allegation, even if true, would not entitle Davis to a legal remedy. Concerning her own situation, Davis also alleges that MERS should share responsibility with People's Choice's for misconduct in initiating her loan because MERS claims to be a valid beneficiary under the deed of trust. However, Davis provides no factual support for that claim, which amounts to an attempt to hold MERS vicariously liable for People's Choice's allegedly tortious conduct in originating the loan. Thus, Davis does not state any claims against MERS upon which relief could be granted.

## VIII.   Futility of Amendment

In supplemental briefing, Davis identifies several other potential claims for relief that she neglected to include in her fourth amended complaint, including violations of the Truth In Lending Act (TILA) disclosure requirements (15 U.S.C. § 1638(a)(5)-(6)) and the Fair Credit Reporting Act (FCRA) compliance procedures (15 U.S.C. § 1681e). Although these allegations are not properly before the court, I simply note that amendment of Davis' complaint to include these claims would be futile. First, Davis alleges no facts suggesting that either Ocwen or MERS is a creditor liable under TILA. *See* 15 U.S.C. § 1640 (only a creditor is liable under TILA); *Id.*

at § 1641(f) (a loan servicer is not liable under TILA unless it is the owner of the debt obligation

for more than merely administrative or servicing purposes). In fact, Davis takes the opposite

position, insisting that Ocwen has no legal interest in her loan. Second, Davis' allegations do not

suggest that either Ocwen or MERS are consumer reporting agencies with obligations under

FCRA. *See* 15 U.S.C. § 1681a (a comsumer reporting agency is any person who engages in the

practice of "assembling or evaluating consumer credit information or other information for the

purpose of furnishing consumer reports to third parties"). Finally, the district court previously

warned Davis that if she failed to fix the deficiencies in her previous complaint, her fourth

amended complaint would be dismissed with prejudice. In light of the district court's earlier

order, Davis should not be granted yet another opportunity to amend her complaint.

## IX.    Supplemental Jurisdiction

Given that Davis' potential federal law claims should be dismissed, I take this

opportunity to address the question of whether this court should exercise supplemental

jurisdiction over Davis' remaining state law conversion claim.[6] *See Acri v. Varian Assocs.,* 114

F.3d 999, 1000 (9th Cir. 1997) (en banc) (court need not address *sua sponte* whether to decline

supplemental jurisdiction under §1367(c)). Supplemental jurisdiction exists where state law

claims are so related to claims over which the court has federal question jurisdiction that they

---

[6] As an initial matter, there is no other independent basis for federal jurisdiction over that claim. *See Romero v. International Terminal Operating Co.,* 358 U.S. 354, 381 (1959) (dismissal of state law claims is improper when an independent basis exists for federal jurisdiction). Even assuming that Ocwen and MERS are diverse in citizenship from Davis– which Davis fails to allege in her complaint– Davis' allegations concerning her $2,250.00 insurance charge fail to satisfy the amount in controversy requirement. *See* 28 U.S.C. § 1332(a) (federal courts have original jurisdiction over controversies in excess of $75,000 between parties of diverse citizenship).

Page 17 - FINDINGS AND RECOMMENDATION

form part of the same case or controversy.  28 U.S.C. § 1367(a).  Claims form part of the same

case or controversy if they "derive from a common nucleus of operative fact."  *United Mine*

*Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  Here, Davis' conversion claim derives from her

interactions with Ocwen during the servicing of her mortgage, the same relationship implicated

in Davis' federal claims against Ocwen. Therefore, supplemental jurisdiction exists over Davis'

conversion claim.

Nevertheless, a federal district court with the power to hear state law claims has

discretion to decline to exercise supplemental jurisdiction under the conditions set out in 28

U.S.C. § 1367(c).  *Acri,* 114 F.3d at 1000.  One of those conditions provides that a federal court

may decline to exercise supplemental jurisdiction where it has already dismissed all other federal

claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  In determining whether

to decline to exercise supplemental jurisdiction, the court must consider the factors of economy,

convenience, fairness and comity.  *Acri*, 114 F.3d at 1001.  The Supreme Court and the Ninth

Circuit both make clear that "in the usual case in which all federal-law claims are eliminated

before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988)).  But, dismissing state law claims may be an abuse of discretion in some instances.  *See,*

*e.g., Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape &*

*Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (ordering dismissal of state law claims seven days

before trial was unfair to the parties and an inefficient use of judicial resources).  Here, the *pro se*

plaintiff has struggled for months to produce a complaint articulating a colorable claim, this court

has acquired some familiarity with factual issues in the case, and Davis' conversion claim

involves a straightforward matter of state law. Dismissing the claim without prejudice for Davis to re-file in state court would unnecessarily delay a resolution of this case and would likely generate additional costs for all parties. Accordingly, this court should continue to exercise supplemental jurisdiction over Davis' conversion claim.

## CONCLUSION

For the foregoing reasons, defendants' Ocwen and MERS' motion to dismiss (#59) should be granted in part and denied in part. Davis' allegations properly state a conversion claim against Ocwen regarding the flood insurance charge to her escrow account. All other claims against Ocwen and MERS should be dismissed with prejudice. Moreover, Davis is reminded of the district court's October 27, 2010 order directing her to effect proper service on any defendants against whom she intends to proceed no later than March 24, 2011.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

//

//

//

//

//

Page 19 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.


Dated this 4th day of February, 2011.

Honorable Paul Papak
United States Magistrate Judge